UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In Re:                                          Chapter 13

MICHAEL R. EVANS and                             Case No. 23-10622-t13
KELLY N. EVANS,

                            Debtors.

_____

STRATEGIC FUNDING SOURCE, INC.,                  Adv. No.

                            Plaintiff,

v.

MICHAEL R. EVANS and
KELLY N. EVANS,

                            Defendants.


## COMPLAINT TO DETERMINE
## NONDISCHARGEABILITY OF DEBT


Strategic Funding Source, Inc. ("Strategic," "SFS or "Plaintiff"), by and through its

undersigned attorneys, files this Complaint under Section 523 of Title 11 of the United

States Code, 11 U.S.C. §§ 101 – 1532 (as amended, the "Bankruptcy Code") objecting to

the dischargeability of a pre-petition debt owed by Defendant Kelly N. Evans ("Kelly

Evans" or "Guarantor") and Michael R. Evans ("Michael Evans" and, collectively with

Kelly Evans, "Defendants") to Strategic and in support hereof alleges as follows:

## JURISDICTION AND VENUE

1.     This is a core proceeding under 28 U.S.C. §157(b)(2)(I) and is brought pursuant to Section 523 of the Bankruptcy Code and Rule 4007 of the Federal Rules of Bankruptcy Procedure.

2.     Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 157 and 1334.

3.     Venue over the instant action properly lies in this Court pursuant to 28 U.S.C. § 1409(a) because this Complaint arises in Defendants' Chapter 13 bankruptcy case.

4.     If the Court should find that this is not a core proceeding, Plaintiff consents to entry of final judgment by the Court.[1]

## THE PARTIES

5.     Plaintiff is a Virginia corporation, and at all relevant times maintained its offices formally located at 211 Bulifants Boulevard., Suite E, Williamsburg, Virginia 22201 and 120 West 45th Street, New York, New York 10036.

---

[1] Notwithstanding any of the allegations and claims herein, the institution of this Adversary Proceeding, the filing of this Complaint and any other appearances in this Adversary Proceeding and in the above-referenced bankruptcy case ("Bankruptcy Case"), including the submission of motions, opposition papers, and entry of orders, is without waiver, and express reservation, of any and all of Plaintiff's rights, defense and remedies available at law and in equity, including, without limitation, under the Agreements (as defined below), Uniform Commercial Code, any other applicable federal or state law and/or commercial code, and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* Plaintiff filed a proof of claim in the Bankruptcy Case ("Proof of Claim") on October 10, 2023, Plaintiff expressly incorporates any reservation of rights that it shall incorporate in the Proof of Claim and any amendments thereto.

6.     Defendants are natural persons and, upon information and belief, are residents of the state of New Mexico with a mailing address of 745 Playful Meadows Circle NE, Rio Rancho, New Mexico 87144.

7.     Kelly Evans owned a business engaged in structural steel fabrication and erection: M.K. Custom Fabrication LLC d/b/a/ M.K. Custom Fabrication LLC ("Merchant")

8.     Upon information and belief, at all times relevant hereto, Kelly Evans is and was the sole member and manager of Merchant, and Kelly Evans made all decisions and statements to Plaintiff relevant to the issues herein.

9.     Plaintiff has a claim against Defendants in the amount of $205,845.81 as of July 31, 2023 ("Petition Date"), plus accrued and accruing attorneys' fees, costs, expenses and interest.

## GENERAL ALLEGATIONS

10.     On the Petition Date, Defendants filed for bankruptcy under Chapter 13 of the Bankruptcy Code [DE 1].

11.     Pursuant to Official Form 309I filed on July 17, 2023, the deadline to object to discharge is November 13, 2023 [DE 9].

12.     Accordingly, this Complaint is timely filed.

## SPECIFIC FACTUAL ALLEGATIONS

13.     On or about February 8, 2018, Kelly Evans, as owner of Merchant, completed an application for funding ("Application").  A true and accurate copy of the Application upon which Strategic relied is attached hereto as **Exhibit A**.

14.     In the Application, Kelly Evans represented the following that Merchant had average monthly sales of $300,000.  *Id.*

15.     Kelly Evans provided business and financial records in support of her Application, including the following bank statements which are summarized, in part, as follows:

| Bank Account | Dates | Opening Balance | Closing Balance | Total Deposits | Total Debits |
|---|---|---|---|---|---|
| Bank of West #2566 | 1.1.17-1.31.17 | $17,692.72 | $17,079.53 | $20 | $633.19 |
| BOW #2566 | 2.1.17-2.28.17 | $17,092.53 | $16,484.27 | $20 | $615.25 |
| BOW #2566 | 3.1.17-3.31.17 | $16,484.27 | $15,852.99 | $20 | $652.28 |
| BOW #2566 | 4.1.17-4.30.17 | $15,852.99 | $15,185 | $20 | $687.99 |
| BOW #2566 | 5.1.17-5.31.17 | $15,185 | $14,527.38 | $20 | $677.62 |
| BOW #2566 | 6.1.17-6.30.17 | $14,527.38 | $13,711.12 | $20 | $836.26 |
| BOW #2566 | 7.1.17-7.31.17 | $13,711.12 | $13,041.44 | $20 | $689.68 |
| BOW #2566 | 8.1.17-8.31.17 | $13,041.44 | $12,361.34 | $20 | $700.10 |
| BOW #2566 | 9.1.17-9.30.17 | $12,361.34 | $11,681.24 | $20 | $700.10 |

4

| Bank Account | Dates | Opening Balance | Closing Balance | Total Deposits | Total Debits |
|---|---|---|---|---|---|
| BOW #2566 | 10.1.17-10.31.17 | $11,681.24 | $11,009.67 | $20 | $691.57 |
| BOW #2566 | 11.1.17-11.30.17 | $11,009.67 | $10,329.56 | $20 | $700.11 |
| BOW #2566 | 12.1.17-12.31.17 | $10,329.56 | $9,657.99 | $20 | $691.57 |
| BOW #2566 | 1.1.18-1.31.18 | $9,657.99 | $8,964.34 | $20 | $713.65 |
| Chase #0249 | 1.1.17-1.31.17 | $128,249.76 | $136,876.70 | $271,985.15 | $263,002.21 |
| Chase #0249 | 2.1.17-2.28.17 | $62,822.10 | $59,808.23 | $161,055.25 | $164,069.12 |
| Chase #0249 | 3.1.17-3.31.17 | $59.808.23 | $72,967.54 | $271,260.19 | $258,100.88 |
| Chase #0249 | 4.1.17-4.30.17 | $72,967.54 | $19,131.75 | $85,522.95 | $139,358.74 |
| Chase #0249 | 5.1.17-5.31.17 | $19,131.75 | $73,879.52 | $295,633.73 | $240,885.96 |
| Chase #0249 | 6.1.17-6.30.17 | $73,879.52 | $25,429.89 | $145,502.36 | $193,952.01 |
| Chase #0249 | 7.1.17-7.31.17 | $25,429.87 | $164,245.66 | $354,327.23 | $215,511.44 |
| Chase #0249 | 8.1.17-8.31.17 | $164,245.66 | $54,603.04 | $235,140.84 | $344,783.46 |
| Chase #0249 | 9.1.17-9.30.17 | $54,603.04 | $77,905.02 | $233,058.80 | $209,746.81 |
| Chase #0249 | 10.1.17-10.31.17 | $77,905.02 | $81,960.23 | $283,303.98 | $280,057.40 |
| Chase # 0249 | 11.1.17-11.30.17 | $81,151.60 | $128,249.76 | $503,817.65 | $456,719.49 |
| Chase # 0249 | 12.1.17-12.29.17 | $128,249.76 | $136,876.70 | $271,985.15 | $263,358.21 |

| Bank Account | Dates | Opening Balance | Closing Balance | Total Deposits | Total Debits |
|---|---|---|---|---|---|
| Chase # 0249 | 12.30.17-1.31.18 | $136,876.70 | $132,663.68 | $372,464.64 | $376,677.66 |

16.    Strategic was also provided with a balance sheet, a P&L, a 2016 tax return and an accounts receivable aging report.  The balance sheet showed Merchant had $654,000 in receivables and $115,000 in bank accounts.  The accounts receivable aging report showed $280,000 in current receivables, $193,000 in receivables 0-30 days old and $42,000 in receivables 30-60 days old.  The P&L showed Merchant had 2017 income of $2.9 million.

17.    Strategic requires, as a threshold step in its consideration of whether to purchase a potential merchant's future receivables, that each merchant sign an agreement and provide certain written representations about its financial situation, operational plans, and intentions. Because Strategic's funding process is truncated from that of a standard financing institution, as is typical for the alternative financing industry, Strategic relies heavily upon a merchant's representations and warranties made during the application process.

18.    On February 12, 2018, Kelly Evans, in her capacity as owner and representative of Merchant, and in her individual capacity as Guarantor, executed a Revenue Based Factoring (RBF/ACH) Agreement ("Agreement") with Strategic.  Further, in the Agreement, Merchant granted Strategic a security interest in all assets and equity interests of Merchant.  A true and correct copy of the Agreement is attached hereto as **Exhibit B**.

6

19.     Pursuant to the Agreement, Plaintiff purchased $190,920.00 ("Receipts Purchased Amount") of "future receipts, accounts, contract rights and other obligations arising from or relating to the payment of monies from Merchant's customers and/or other third party payors," including "all payments made by cash, check, electronic transfer or other form of monetary payment in the ordinary course of [M]erchant's business" ("Receivables") for the total gross purchase price of $148,000.00 ("Purchase Price"). Contemporaneously with the execution of the Agreement, and as further security, Kelly Evans executed a personal guaranty ("Guaranty"), guaranteeing Merchant's full performance of all terms and obligations under the Agreement, including performance of all representations, warranties, and covenants.  A true and correct copy of the Guaranty is attached as part of the Agreement.

20.     Under the Agreement, Merchant agreed that Strategic could debit approximately 5.1% (or $777) of Merchant's daily deposits.

21.     Once Strategic funded the Purchase Price, it became the owner of Merchant's Receivables up to the Receipts Purchased Amount of $190,920.00.

22.     In connection with the Agreement, Merchant agreed to the following:

> The Receipts Purchased Amount shall be paid to SFS by the Merchant irrevocably authorizing only one depositing account acceptable to SFA ("the Account") to remove the percentage specific below (the "Specified Percentage") of the Merchant's Receipts, until such time as SFS receives payment in full of the Receipts Purchased Amount. In consideration of servicing the account, the Merchant hereby authorizes SFS to ACH Debit the "Specified Daily Amount" from the merchant's bank account as the base payment credited against the Specified Percentage due. . . . Merchant understands that it is responsible for ensuring that funds adequate to cover amount to be debited by SFS remains in the account. . . . Notwithstanding anything

7

to the contrary in this Agreement or any other agreement between SFS and Merchant, upon the violation of any provision contained in Section 1.11 of the FACTORING AGREEMENT TERMS AND CONDITIONS or the occurrence of an Event of Default under Section 3 of the FACTORING AGREEMENT TERMS AND CONDITIONS, the Specified Percentage shall equal 100%.

Agreement at 1.

23.     Kelly Evans also represented, warranted, and covenanted the following:

Each of the above-signed Merchant and Owner(s) represents…the information provided herein and in all of SFS documents, forms, and recorded interviews is true, accurate and complete in all respects. . . .

**II. REPRESENTATIONS, WARRANTIES AND COVENANTS.**
Merchant represents, warrants and covenants that as of this date and during the term of the Agreement:

**2.1    Financial Condition and Financial Information**.    The information and financial statements which have been furnished to SFS, and such future statements which will be furnished hereafter at the request of SFS, fairly represent the ownership and operations of the Merchant at such dates, and since those dates there has been no material adverse change, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant has a continuing, affirmative obligation to advise SFS of any material adverse change in its financial condition, operation or ownership . . .

**2.9    No Bankruptcy or Insolvency**.    As of the date of this Agreement, Merchant represents that it is not insolvent and does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it. . . .

**2.10  Other Financing.    Merchant shall not enter into any arrangement, agreement or commitment for any additional financing, whether in the form of a purchase of receivables or a loan to the business with any party other than SFS without their written permission.**

**2.11   Unencumbered Receipts**.  Merchant has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of SFS.

**2.12   Business Purpose**.  Merchant is a valid business in good standing under the laws of jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

**2.13   Default Under Other Contracts**.  Merchant's execution of and/or performance under this Agreement will not cause or create an event of default by Merchant under any contract with another person or entity.

Agreement at 1, 3–4 (emphasis in original).

24.     The Agreement provides for attorneys' fees and costs in Strategic's enforcement of its rights under the Agreement.  Agreement at 4.

25.     The Agreement provides the following remedies if there is an "Event of Default," as defined in the Agreement:

- The full uncollected Receipts Purchased Amount plus all fees due under this Agreement and the attached Security Agreement become due and payable in full immediately.

- SFS may enforce the provisions of the Personal Guarantee of Performance against the Guarantor.

- The entire Receipts Purchased Amount shall become immediately payable to SFS from Merchant.

- SFS may proceed to protect and enforce its rights and remedies by legal action.  In any such litigation, in which SFS shall recover judgment against Merchant, Merchant shall be liable for all of SFS's costs of litigation, including but not limited to all reasonable attorneys' fees and court costs.

9

- Merchant shall, upon execution of this Agreement, deliver to SFS an **executed assignment of lease of Merchant's premises** in favor of SFS. Upon breach of any provision in this paragraph 1.12, SFS may exercise its rights under such assignment of lease.

Agreement at 3 (emphasis in original).

26.     In executing the Agreement, Kelly Evans agreed that all information provided in documents, forms and recorded interviews was "true, accurate, and complete in all respects," and the Agreement further emphasized that "If any information provided is false or misleading, Merchant shall be deemed in material breach of all agreements between Merchant and SFS and SFS shall be entitled to all remedies available under law." *Id*. at p. 2.

27.     The Agreement further emphasized that "**ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL FRAUDULENT INDUCEMENT TO OBTAIN FINANCING.**" Agreement at 2 (emphasis in original).

28.     After submitting her application, business and financial information, and written agreements and representations, Strategic and Kelly Evans engaged in a recorded telephone call on February 12, 2018, prior to the funding of the Purchase Price (the "Funding Call").

29.     The relevant portions of the Funding Call are transcribed below:

Plaintiff Representative: "We'd like to thank you for allowing us to service your working capital needs."

. . . .

10

Plaintiff Representative: "Do you anticipate closing your business for any reason over the next twelve months?"

Kelly Evans: "No."

Plaintiff Representative: "Do you anticipate selling your business in the next twelve months?"

Kelly Evans: "No."

Plaintiff Representative: "Have you been planning to file or do you know of any reason to believe that your business will need to file for bankruptcy protection in the foreseeable future?"

Kelly Evans: "No."

Plaintiff Representative: "Are you current on your payments to you landlord for the business property?

Kelly Evans: "Yes."

. . . .

Plaintiff Representative: "Are you in delinquency on any loans or with any financial institutions."

Kelly Evans: "No."

30.     Later in the Funding Call, the following exchange occurred:

Plaintiff Representative: "And do you recognize that any false statements or misrepresentation may constitute fraud and subject you to legal action?"

Kelly Evans: "Yes."

31.     Further, in the Guaranty, Kelly Evans guaranteed "performance of all of the representations, warranties, covenants made by Merchant" in the Agreement.

32.     Upon information and belief, Michael Evans worked for Merchant and assisted Kelly Evans in the management and operations of Merchant.

33. Upon information and belief, Kelly Evans' representations in the Application, Agreement, Guaranty and the Funding Call set forth herein were false, and Kelly Evans knew they were false at the time she made them.

34. On February 13, 2018, in reliance on the representations made by Kelly Evans in the Application, Agreement and the Funding Call, as well as the financial information provided to Strategic, Plaintiff funded the Agreement.

35. A week later, on February 20, 2018, an ACH debit was returned due to insufficient funds.

36. Subsequent daily ACH debits cleared until April 6, 2018, and thereafter six consecutive ACH debits were returned due to insufficient funds. The last payment Strategic received from Merchant was on April 3, 2018, which cleared April 6, 2018.

37. Upon information and belief, one or more of the above-referenced debits did not clear because Merchant began depositing Receivables into a different bank account in an effort to cut Strategic off from collecting the purchased Receivables.

38. Merchant filed Chapter 7 bankruptcy on April 2, 2018, a little over a month after obtaining the funding from Strategic.

39. Upon information and belief, at the time the Agreement was being negotiated with Merchant, it was not in good standing with the landlord for the business property.

40. Upon information and belief, just days before the Agreement was executed, Merchant received a written notice from its landlord that the landlord was terminating the lease for breach of numerous lease provisions.

41.     Upon information and belief, this termination caused rent for the entire remaining lease period to because due and payable; however, Merchant did not pay this balance.

42.     Upon information and belief, at the time the Agreement was being negotiated, Kelly Evans was aware of the termination and acceleration of rent, but intentionally withheld this information from Strategic and misrepresented Merchant's standing with its landlord.

43.     Upon information and belief, the landlord commenced eviction proceedings against Merchant on March 1, 2018, mere weeks after Merchant received funding from Strategic based on the representations made by Kelly Evans.

44.     Upon information and belief, at the time the Agreement was being negotiated, Merchant was delinquent on loans and/or with its vendors.

45.     Upon information and belief, Kelly Evans knew that most of the Receivables were uncollectible at the time the Agreement was entered into with Strategic.  The bankruptcy trustee appointed in the Merchant bankruptcy filed approximately six weeks after the funding, was unable to collect substantially all of the $900,000+/- of the outstanding Receivables.

46.     Upon information and belief, at the time the Agreement was being negotiated Kelly Evans was aware of these delinquencies, but knowingly and intentionally misrepresented this information to Strategic.

47.     Upon information and belief, at the time the Agreement was being negotiated Kelly Evans was aware that Merchant may need to file for bankruptcy protection very soon

due to the termination of Merchant's lease, the above-referenced delinquencies, other delinquencies with vendors, and for other reasons.

48.     Upon information and belief, at the time the Agreement was being negotiated, Merchant was in fact insolvent because it was not able to pay its debts when they came due, and the sum of its debts was greater than the value of all of its property at fair valuation.

49.     Upon information and belief, and because of the foregoing financial difficulties, some or all of the funding was not used as working capital. Strategic would not have entered into the Agreement and permitted the funding if it knew Merchant would not use the funding for working capital.

50.     Indeed, Merchant sought out and engaged a consultant, on or prior to February 9, 2018, to advise it on a financial turnaround or restructure prior to signing the Agreement. The consultant was paid a total of approximately $124,409.18, with the first payment of $13,831.37 being made on February 13, 2018, the same day Strategic funded the Agreement. The second payment of $60,000 was made on February 15, 2018. Upon information and belief, these payments were made with the Strategic funding. Strategic would not have funded the Merchant under the Agreement if it knew Merchant was simultaneously retaining a turnaround consultant for its business *and* was using the funding for that purpose.

51.     Upon information and belief, at the time the Agreement was being negotiated, Kelly Evans did not in fact intend to guaranty the Merchant's performance

under the Agreement, but knowingly and intentionally misrepresented her intent to Strategic.

52.     Upon information and belief, Kelly Evans made the above misrepresentations knowingly and intentionally with the intent to induce Strategic to enter into the Agreement and advance funds to them.

53.     On May 31, 2018, Debtor signed a Warranty Deed conveying real property at 3550 South Harlan Street, Unit 126, Denver, Colorado 80235 ("Denver Property"), to Debra Ann Hamon.  The purchase price of the property was $175,000.

54.     Upon information and belief, Michael Evans did not have any ownership interest in the Denver Property.

55.     On June 20, 2018, Strategic filed a lawsuit against Kelly Evans in Virginia. The complaint sought $164,952 in damages.

56.     A day later – June 21, 2018 – and upon information and belief, the proceeds from the sale of the Denver Property were used to buy real property at 745 Playful Meadows Circle NE, Rio Rancho, New Mexico 87144-7301 ("New Mexico Property") by Defendants.

57.     The warranty deed conveying the New Mexico Property only lists Michael Evans as the Grantee.

58.     The New Mexico Property was purchased for approximately $230,000, with an estimated mortgage of $184,000.

59.     On June 21, 2018, Kelly Evans signed a sole and separate property conveyance, conveying any interest she had in the New Mexico Property to Michael Evans.

60.     On December 20, 2018, the Virginia court entered judgment against Kelly Evans and in favor of Strategic for $164,952, plus interest at the Virginia judgment rate of 6%, plus $8,250 in attorneys' fees.

61.     On March 13, 2020, Strategic domesticated the Virginia judgment in New Mexico.  A transcript of judgment was filed on April 22, 2020, for a total of $173,202, including 6% interest from December 2018 until paid in full, plus costs and fees of 8.75% per annum from December 20, 2018 until paid in full.  The transcript of judgment was recorded in Sandoval County on June 11, 2020.

62.     The recorded judgment in New Mexico is enforceable against both Defendants – i.e., their separate and community property.

63.     Upon information and belief, the current value of the New Mexico Property is approximately $369,400.

## COUNT I

### Nondischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2)(A)

64.     Plaintiff repeats and realleges the foregoing paragraphs and incorporates the same as though set forth herein.

65.     Under 11 U.S.C. § 523(a)(2)(a), the court will hold that a debt is not dischargeable when it is obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's … financial condition."

66.     Upon information and belief, Kelly Evans entered into and caused Merchant to enter into the Agreement with the specific intent not to pay the Receipts Purchased

Amount to Strategic, and Kelly Evans made false statements to Plaintiff with the intent to induce Plaintiff to purchase the Receipts, including, but not limited to, the following:

a.      Kelly Evans represented that the Merchant had average monthly sales of $300,000. She also represented that Merchant had $654,000 in receivables, including $280,000 in current receivables, $193,000 in receivables 0-30 days old and $42,000 in receivables 30-60 days old. She also represented that Merchant had 2017 income of $2.9 million. These pretenses and representations were false. Kelly Evans knew the Merchant was in financial crisis and she knew that most of the Receivables were uncollectible when the Agreement was executed. Further, under the Agreement, she had a continuing, affirmative duty to advise Strategic of any material adverse change in its financial condition, operation or ownership of the Merchant, and she failed to do so.

b.      Kelly Evans represented that the Merchant was not insolvent, but this was false. The Merchant was insolvent as of the date the Agreement. The Merchant was in default to its landlord. It was behind on its payments to other financial institutions and vendors. Most of its Receivables were uncollectible. And Merchant had already retained a turnaround consultant.

c.      Kelly Evans represented that the Merchant was not contemplating a bankruptcy filing, and it was not anticipating filing a bankruptcy filing, at the time of the Agreement. Again, this was false. Merchant had already retained a turnaround consultant as of the date of the Agreement and even used the proceeds from the funding to pay the consultant. Further, Merchant filed a bankruptcy petition a month and a half after obtaining the funding from Strategic.[2]

d.      In the Funding Call, Kelly Evans represented that she did not anticipate closing her business for any reason or selling her business over the "next twelve months." This was false. Merchant had already retained a turnaround

---

[2] If the statement regarding the intention to file for bankruptcy is a statement "respecting the debtor's or an insider's financial condition" as such term is used in 11 U.S.C. § 523(a)(2), then as an alternative to this claim under 11 U.S.C. § 523(a)(2)(A), Kapitus relies on its claim under 11 U.S.C. § 523(a)(2)(B) set forth below.

consultant as of the date of the Agreement and used the funding to pay the consultant.[3]

e.       In the Funding Call, Kelly Evans represented that Merchant was current on its payments to its landlord for the business property. This was false. Merchant was in default to its landlord as of the date of the Funding Call and the Agreement.

f.       In the Funding Call, Kelly Evans represented that Merchant was not delinquent on any loans or with any financial institutions. Upon information and belief, this representation was false as evidenced by Merchant's bankruptcy schedules and its retention of the turnaround consultant prior to entering into the Agreement with Strategic.[4]

g.       Kelly Evans knew the Strategic funds were for Merchant's working capital, but at least some of the proceeds were used to pay fees to a turnaround consultant.[5]

h.       Kelly Evans falsely and fraudulently represented that Merchant would only utilize the Account for remitting the purchased Receivables to Strategic, irrevocably authorized Strategic to debit the amounts due under the Agreement from such account, and would ensure that sufficient funds remained in such account from which the purchased Receivables would be paid, when in fact approximately a six weeks after executing the Agreement, there were insufficient funds in the Account.

67.     Based on Kelly Evans' representations, Strategic funded Merchant pursuant to the Agreement. Merchant made only a handful of payments to Strategic pursuant to the

---

[3] If the statement regarding expecting to close its business for any reason in the next twelve months is a statement "respecting the debtor's or an insider's financial condition" as such term is used in 11 U.S.C. § 523(a)(2), then as an alternative to this claim under 11 U.S.C. § 523(a)(2)(A), Kapitus relies on its claim under 11 U.S.C. § 523(a)(2)(B) set forth below.

[4] If the statement regarding not being in arrears on any loans or obligations is a statement "respecting the debtor's or an insider's financial condition" as such term is used in 11 U.S.C. § 523(a)(2), then as an alternative to this claim under 11 U.S.C. § 523(a)(2)(A), Kapitus relies on its claim under 11 U.S.C. § 523(a)(2)(B) set forth below.

[5] If the statement regarding use of the proceeds of the Agreement is a statement "respecting the debtor's or an insider's financial condition" as such term is used in 11 U.S.C. § 523(a)(2), then as an alternative to this claim under 11 U.S.C. § 523(a)(2)(A), Kapitus relies on its claim under 11 U.S.C. § 523(a)(2)(B) set forth below.

Agreement before defaulting. Strategic relied on these misrepresentations to extend the funding and execute the Agreement.

68.     Then, after defaulting under the Agreement, Kelly Evans transferred her assets to her husband in an effort to abscond with Strategic's assets and/or shield her assets from any judgment arising from the lawsuit Strategic filed against her the day before the transfer occurred.

69.     Kelly Evans' statements and acts constitute conduct to obtain money by false pretenses, false statements, or actual fraud.

70.     Defendants' debt to Strategic is a debt for money, property, services, or an extension, renewal, or refinancing of credit, obtained by false pretenses, a false representation, or actual fraud, and is nondischargeable. Strategic is entitled to an award of damages in the amount of $205,845.81 through the Petition Date, plus accrued and accruing attorneys' fees, costs, expenses and interest, and such other relief as the Court deems just and proper.

## COUNT II

### Nondischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2)(B)

71.     Plaintiff repeats and realleges the foregoing paragraphs and incorporates the same as though set forth herein.

72.     Pursuant to 11 U.S.C. § 523(a)(2)(B), a debt in which a debtor obtains money by a statement in writing that is materially false respecting an insider's financial condition, on which the creditor reasonably relied, and which the debtor caused to be published with intent to deceive is nondischargeable.

19

73.     Kelly Evans and Merchant, insiders of Kelly Evans, did obtain money from Strategic by statements in writing – in the Application and the Agreement – by making materially false statements with respect to Merchant's financial condition on which Strategic reasonably relied, including, but not limited to, the following:

   a.   Kelly Evans represented that the Merchant had average monthly sales of $300,000. She also represented that Merchant had $654,000 in receivables, including $280,000 in current receivables, $193,000 in receivables 0-30 days old and $42,000 in receivables 30-60 days old. She also represented that Merchant had 2017 income of $2.9 million. These statements were materially false. Kelly Evans knew the Merchant was in financial crisis and she knew that most of the Receivables were uncollectible when the Agreement was executed. Further, under the Agreement, she had a continuing, affirmative duty to advise Strategic of any material adverse change in its financial condition, operation or ownership of the Merchant and she failed to do so.

   b.   Kelly Evans represented that the Merchant was not insolvent, but this was materially false. The Merchant was insolvent as of the date the Agreement. The Merchant was in default to its landlord. It was behind on its payments to other financial institutions and vendors. Most of its Receivables were uncollectible. And Merchant had already retained a turnaround consultant.

   c.   Kelly Evans represented that the Merchant was not contemplating a bankruptcy filing, and it was not anticipating filing a bankruptcy petition, at the time of the Agreement. Again, this was materially false. Merchant had already retained a turnaround consultant as of the date of the Agreement and even used the proceeds from the funding to pay the consultant. Further, Merchant filed a bankruptcy petition a month and a half after obtaining the funding from Strategic.

74.     Kelly Evans' conduct described above constitutes obtaining money by materially false written statement regarding an insider's financial condition, on which Plaintiff relied, and which Kelly Evans published with the intent to deceive.

75.     Consequently, Defendants' debt to Plaintiff is one for money obtained by materially false written statement regarding an insider's financial condition, on which

Plaintiff relied, and which Kelly Evans made with intent to deceive, and is nondischargeable.

76. As a result of Kelly Evans' statements and acts described above, Defendants are not entitled to a discharge pursuant to Section 523(a)(2) of the Bankruptcy Code. Accordingly, Defendants' debt to Plaintiff is nondischargeable, and Plaintiff is entitled to an award of damages in the amount of $205,845.81 through the Petition Date, plus accrued and accruing attorneys' fees, costs, expenses and interest, and such other relief as the Court deems just and proper.

## COUNT III

### Nondischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(4)

77. Plaintiff repeats and realleges the foregoing paragraphs and incorporates the same as though set forth herein.

78. Defendants' liability to Strategic as alleged herein, is a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" within the meaning of 11 U.S.C. § 523(a)(4).

79. Upon information and belief, Kelly Evans' conduct meets all four grounds for nondischargeability under Section (a)(4): she committed fraud while serving in a fiduciary relationship to Strategic; she committed a defalcation while serving in a fiduciary relationship to Strategic; she embezzled funds; and she committed larceny.

80. Kelly Evans was in a fiduciary relationship with Strategic for two separate reasons. First, she had a fiduciary duty to Strategic when she began holding Strategic's purchased Receivables in trust for Strategic. The Agreement is governed by Virginia law,

and under Virginia law an express trust is found when there is the intention that the money be kept or used as a separate fund for the benefit of the payor or a third person. Here, the parties entered into an express trust with regard to the purchased Receivables when they executed the Agreement and Kelly Evans began collecting the Receivables. Kelly Evans was to hold the Receivables in the Account for Plaintiff's benefit. She did not do so.

81.    Second and alternatively, and as an officer of Merchant, Kelly Evans had fiduciary duties to creditors when Merchant became insolvent or was in the zone of insolvency, including to hold in trust corporate assets for the benefit of creditors. Upon information and belief, and contrary to Kelly Evans' representations to Strategic at the time, Merchant was already insolvent or was in the zone of insolvency at the time it sought funding from Strategic and signed the Agreement.

82.    When a company becomes insolvent, the owners, officers, and directors stand in a trust relation towards creditors, and as trustees of corporate properties for the benefit of creditors. Hence, the owners, officers, and directors of an insolvent corporation are placed in a fiduciary relation to its creditors.

83.    Because Merchant was insolvent at the time it received funds from Plaintiff or became insolvent shortly thereafter, as Merchant's owner, Kelly Evans owed fiduciary duties to manage Merchant's assets in trust for its creditors, including Strategic. Kelly Evans did not do so – she advanced significant sums of money to a turnaround consultant; failed to cure defaults to Merchant's landlord; and filed bankruptcy on behalf of the Merchant shortly after obtaining funding from Plaintiff. She did so again by fraudulently

transferring her assets to her husband as his sole and separate property and/or converting those assets.

84.     Upon information and belief, Kelly Evans entered into the Agreement with the specific intent to transfer or hide the funds received, the Receivables and collateral and prevent Strategic from collecting the obligations owed to it.

85.     Upon information and belief, Kelly Evans obtained the funding and took the funding by committing fraud and defalcation while acting in a fiduciary capacity as the owner of Merchant.

86.     Upon information and belief, Kelly Evans used the funds received and the Receivables without explanation, reason or purpose relating to Merchant's business and failed to use the funds for working capital.  As one example, she also used them to pay a turnaround consultant, knowing full well that she has represented to Strategic that the Merchant was solvent.

87.     Kelly Evans' failure to manage Merchant's assets is a breach of fiduciary duty.

88.     Upon information and belief, Kelly Evans used her power as owner of Merchant for the purpose of obtaining a preference or advantage for herself.

89.     Upon information and belief, all of the acts and omissions that constitute a breach or default of the Agreement were performed or omitted by Kelly Evans and/or at the direction of, or with the consent of, Kelly Evans and, thus, Kelly Evans is in breach of the Agreement giving Strategic a right to recover damages.

90.     Further, Kelly Evans represented that she would collect and deposit all of Merchant's Receivables into the Account and provided irrevocable authorization to Strategic to make its ACH debits of its percentage of Receivables out of the Account. Nevertheless, Kelly Evans failed to fund, and then closed, the Account.

91.     Kelly Evans committed fraud by taking and allowing herself, personally and through Merchant, to gain an advantage over Strategic.  She obtained funding from Strategic with her false suggestions and suppression of the truth, shut Strategic out from accessing and debiting its purchased Receivables as they were collected and, upon information and belief, used those Receivables for her own and Merchant's benefit.  She then fraudulently transferred her assets to her husband as his sole and separate property the day after Strategic filed a lawsuit against her in Virginia.

92.     Kelly Evans committed defalcation while in a fiduciary relationship to Strategic when she failed to account for the Receivables owned by Strategic that Strategic had entrusted to her.

93.     Kelly Evans committed embezzlement when she appropriated Receivables that Strategic had entrusted to her and failed to hold them in trust or remit them to Strategic as promised.

94.     Finally, upon information and belief, Kelly Evans transferred the purchased Receivables into accounts accessible only to Kelly Evans and Merchant, which constitutes larceny.

95.     As a result of Kelly Evans statements and acts described above, Defendants are not entitled to a discharge pursuant to Section 523(a)(4) of the Bankruptcy Code.

Accordingly, Defendants' debt to Plaintiff is nondischargeable, and Plaintiff is entitled to an award of damages in the amount of $205,845.81 through the Petition Date, plus accrued and accruing attorneys' fees, costs, expenses and interest, and such other relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for entry of judgment against Defendants, as follows:

a.    For an award of damages in the amount of $205,845.81 through the Petition Date, plus accrued and accruing attorneys' fees, costs, expenses and interest; and

b.    For an order providing that the debt owed by Defendants to Plaintiff is nondischargeable in the instant bankruptcy case, in any other chapter under Title 11 to which this case may be converted, and in any future bankruptcy case filed by or against Defendants; and

c.    For such other and further relief as this Court may deem just and proper.

DATED this 11th day of November, 2023.

   /s/  Scott K. Brown (NM Bar No. 149032)
Scott K. Brown
Anderson Clarkson Brown PLLC
2158 North Gilbert Road, Suite 114
Mesa, Arizona 85203
Direct Dial: (480) 247-0557
E-mail: sbrown@acblawgroup.com
*Attorneys* for *Plaintiff*