UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

MICHAEL R. EVANS and
KELLY N. EVANS,

    Debtors.

No. 23-10622 t13

**<u>OPINION</u>**

    Debtors' first amended plan includes a motion to avoid a judgment lien that allegedly impairs the Debtors' homestead exemption.[1] To rule on the motion, the Court must first decide whether Debtors' house is encumbered by a purchase money security interest in a solar panel system installed on the roof of the house. If the solar panels and related equipment are fixtures, the answer likely is yes; otherwise, the answer is no. The issue was submitted to the Court on stipulated facts. The Court finds that the solar panels are not fixtures, so the purchase money security interest does not encumber the house.

A.    <u>Facts</u>.[2]

    The Court finds, based on the stipulated facts:[3]

    In 2018, Debtors Michael and Kelly Evans moved to New Mexico from Colorado. In June of that year Michael Evans ("Evans") bought Debtors' current residence at 745 Playful Meadows,

---

[1] There is a dispute about whether Kelly Evans is entitled to claim a homestead exemption, as the house is owned solely by Michael Evans. The Court does not address that issue in this opinion.

[2] The Court took judicial notice of the docket in this case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may sua sponte take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).

[3] Some of the Court's findings are in the discussion section of the opinion. They are incorporated by this reference.

Rio Rancho, New Mexico 87144 (the "House"). Debtors have a written agreement that the House is Evans's sole and separate property.

In October 2019, Matthew Rees obtained a Colorado judgment against Debtors, jointly and severally, for $241,070,[4] plus post-judgment interest at 8%. Rees was also awarded attorney's fees, expenses, and costs of $50,158.

Rees domesticated the Colorado judgment in New Mexico's Thirteenth Judicial District Court. A transcript of judgment was issued by the New Mexico court on September 15, 2020. Rees recorded the transcript of judgment in Sandoval County, New Mexico on October 20, 2020, thereby obtaining a judgment lien on the House.

On or about April 11, 2023, Evans signed a Solar Energy Home Improvement Contract ("Contract") with SunPower Corporation ("SunPower"). The Contract provided for the sale and installation of a solar panel system on the roof of the House. The system includes 14 solar panels, 14 inverters, a monitor, and mounting racks and related hardware (the "System").[5]

The Contract states that Evans is pursuing financing from a lender approved by SunPower for the purchase and installation of the System. Consistent with that pursuit, on April 11, 2023, Evans signed a Solar Energy System Long Term Agreement and Promissory Note (the "Loan Agreement and Note").

Under the Loan Agreement and Note, Evans borrowed $23,758 from Technology Credit Union ("Tech CU") to finance the purchase and installation of the System. To secure repayment of the loan, Evans granted Tech CU a purchase money security interest in the System.

In the Loan Agreement and Note, Evans agreed:

---

[4] All dollar amounts are rounded to the nearest dollar.
[5] Each solar panel weighs about 45 pounds. Each inverter weighs about 2.2 pounds. The solar panels are attached via rails and brackets to "Unirac Flashloc" mounts that are, in turn, affixed to the roof with lag bolts.

> The [System] is not difficult to remove from the Residence and . . . it is not intended to be a fixture or to become a permanent part of the Residence. You agree that you will not make the [System] (or allow any Entity Owner to make the [System]) a permanent part of the [House] unless and until you first pay all amounts outstanding under this Note. Accordingly, you agree that our security interest is a security interest in personal property and not a security interest in real property or in the [House].

The Loan Agreement and Note provides that Tech CU will "make a fixture filing covering the [System]." Tech CU did not do so. However, an entity named SunPower Capital Services LLC ("SunPower Capital"), presumably an affiliate of SunPower, filed UCC financing statements with the New Mexico Secretary of State on July 7, 2023, and with the Sandoval County Clerk's Office on July 11, 2023. The financing statements show SunPower Capital as the secured party and Evans as the debtor.

Permits from the City of Rio Rancho, New Mexico, were required before the System could be installed at the House.

SunPower selected JaGa Networks LLC ("JaGa") to install the System. JaGa applied to Rio Rancho for the permits and submitted shop drawings that detailed the System and its proposed installation.

Rio Rancho issued an "Elec permit PV Solar Only" on July 28, 2023. Debtors filed this case on July 31, 2023. There is nothing in the stipulated facts about whether JaGa installed the System and, if so, when. However, Debtors list Tech CU has having a lien on the House, indicating that, at least in their opinion, the System has been installed.

B.   <u>Who Is the Lender</u>?

Neither document Evans signed on April 11, 2023, is a model of clarity. In particular, an Exhibit D to the Contract, titled "(Loan Purchase) Distributed Generation Disclosure Statement," is a remarkable achievement in obfuscation and contradiction. For example, the Contract clearly provides that Evans is buying the System. Exhibit D, on the other hand, states in bold type that

"you are entering into an agreement to purchase power, not to purchase the system. You will not own the system affixed to your property." Immediately above that confusing language, however, is the statement that "this is not a PPA or lease." If PPA means power purchase agreement, then the two statements flatly contradict one another. Another example is that in the Contract, SunPower is the "contractor" and Evans is the "Customer," while Exhibit D calls Evans the "buyer or lessee" and JaGa the "Seller or Marketer." JaGa did not sign anything. The only way to make sense of Exhibit D is to find that it was superseded by the Loan Agreement and Note (which it likely was) and ignore it. The Court so finds.

Another difficulty with the transaction documents is the number of parties involved, namely, Evans, SunPower, Tech CU, SunPower Financing, SunPower Capital, LLC, and JaGa.[6]

The Contract refers to a "financing entity approved by Contractor." The Loan Agreement and Note, in turn, states that Tech CU is SunPower's lending partner and will advance the funds, extend Evans credit, and service the loan. Thus, the Contract and Loan Agreement and Note make clear enough, and the Court finds, that Tech CU loaned the money to Evans to purchase and install the System. Tech CU did not file a proof of claim in this bankruptcy case, which is too bad, but Debtors listed Tech CU as a secured creditor, included Tech CU on the mailing matrix, and provided for full payment of Tech CU's loan in their amended chapter 13 plan.

Despite the drafting vagaries, the Court finds that the Contract and Loan Agreement and Note are sufficiently intelligible to be enforced. In general terms, Evans bought the System from SunPower. The purchase price was $23,758. Evans financed 100% of the purchase price with money borrowed from Tech CU. Evans granted Tech CU a purchase money security interest in the System as collateral for repayment of the loan. At SunPower's behest, JaGa was to install the

---

[6] SunPower would be well advised to update its contract documents to delete Exhibit D and make the rest of the documents easier to understand.

system on the House. It is not known what SunPower paid JaGa for the installation work, or what the status of the installation was on the petition date or is today.

C.   Is the System a Fixture?

If the System is permanently affixed to the House, several questions must be answered to rule on Debtor's § 522(f) motion:

- Is Tech CU's security interest a lien on the House?
- If so, is it perfected?
- Does it matter if the lien is unperfected and therefore avoidable?
- What value did the System add to the House?
- When considering a § 522(f) motion, are loans secured by fixture filings taken into account?

On the other hand, if the System is not a fixture, those questions become moot and the resolution of Debtors' § 522(f) motion becomes more straightforward.

Whether the System is a fixture is a question of state law. *See In re Flores De New Mexico, Inc.*, 151 B.R. 571, 581 (Bankr. D.N.M. 1993) (whether an item has become a fixture is governed by state law).

Under New Mexico law, the System was consumer goods when delivered to the House. *Id.* at 578-79 (goods include all things movable at the time a security interest attaches, while consumer goods are goods "used or bought for use primarily for personal, family or household purposes"). However, if the System was permanently affixed to the House, then for the purposes of the New Mexico Uniform Commercial Code, it would no longer be consumer goods, but instead would have become "fixtures." *See* NMSA § 55-9-102(41) (fixtures are "goods that have become so related to particular real property that an interest in them arises under real property law"); *see also Flores*, 151 B.R. at 578-79 (quoting the definition); *In re Ryan*, 360 B.R. 50, 51 (Bankr. W.D.N.Y. 2007) (once a specialty bathtub, a consumer good, was installed it became a fixture).

To determine whether a particular good becomes a fixture under New Mexico law, three "guidelines" or "tests" are used:

> This court has long recognized three guidelines in determining whether an article used in connection with realty is to be considered a fixture. These guidelines are (1) annexation, (2) adaptation and (3) intention. *Garrison General Tire Service, Inc. v. Montgomery*, 75 N.M. 321, 404 P.2d 143; *Patterson v. Chaney*, 24 N.M. 156, 173 P. 859, 6 A.L.R. 90; *Post v. Miles*, supra.

*Boone v. Smith*, 79 N.M. 614, 616 (S. Ct. 1968); *see also Giant Cab, Inc. v. CT Towing, Inc.*, 453 P.3d 466, 470 (N.M. App. 2019) (citing *Boone*); *Southwestern Public Serv. Co. v. Chaves County*, 85 N.M. 313, 316 (S. Ct. 1973) (citing *Post v. Miles*, 7 N.M. 317 (S. Ct. 1893) and the three tests).

    1.    <u>Annexation</u>. Annexation is the "act of attaching," and "the point at which a fixture becomes a part of the realty to which it is attached." Black's Law Dictionary, (10th Ed.). Easily removed goods generally are not considered annexed. *See, e.g., In re Marla Jean, Inc.*, 25 B.R. 282, 285 (Bankr. W.D. Mo. 1982) (a presumption of lack of intent to affix an article to realty is created when removal can be done without material injury to the freehold); and *In re Tri-State Fabricators, Inc.*, 32 B.R. 260, 262 (Bankr. W.D. Okla.) (citing and following *Marla Jean*); *see generally Mouser v. Caterpillar, Inc.,* 336 F.3d 656, 662 (8th Cir. 2003) (citing *Marla Jean*); *In re Waipuna Trading Co., Inc.*, 41 B.R. 812, 815 (Bankr. D. Haw.) (same). The stipulated facts show that the System is not permanently attached to the House. It could easily be removed without damaging the roof or other parts of the House. It is bolted on and could be unbolted. No annexation has taken place.

    2.    <u>Adaptation</u>. Likewise, the System is not adapted or applied "to the use or purpose to which that part of the realty to which it is connected is appropriated." *Garrison General Tire Service, Inc. v. Montgomery*, 75 N.M. 321, 324 (S. Ct. 1965). It is on the roof, but not part of the roof. The solar panels would function just as well if they were installed in a yard next to the house. A roof location often is chosen because it gets the solar panels out of the way and minimizes

obstructions, but the panels are not part of the House or roof. Indeed, the roof would function better without the System.

   3. <u>Intention</u>. In determining whether goods are fixtures under New Mexico law,

> Generally, the question of intent is the chief test and must affirmatively and plainly appear. Where by express terms of a lease it is provided that improvements shall not become fixtures, and where the nature of the article is such that it is not to be permanently attached to the land, it probably remains personalty and not subject to a mechanics' lien. *Porter Lumber Co. v. Wade*, supra; *Albuquerque Foundry & Machine Works v. Stone*, 34 N.M. 540, 286 P. 157.

*Boone v. Smith*, 79 N.M. at 617; *see also Southwestern Public Serv.*, 85 N.M. at 316 (quoting *Porter Lumber Co. v. Wade*, 38 N.M. 333 (S. Ct. 1934), the court held that "the intention of the party making the annexation is a 'controlling consideration' and 'chief test.'") *Giant Cab*, 453 P.3d at 470 (quoting *Boone*); *ABQ Uptown, LLC v. Davide Enterprises, LLC*, 2015 WL 8364799, at *32-34 (D.N.M.) (citing the three-part test and noting that intention is the most important factor); *In re Vic Bernacchi & Sons, Inc.*, 170 B.R. 647, 652 (Bankr. N.D. Ind. 1994) (intent is the most significant factor); *see generally* 35A Am. Jur. 2d Fixtures § 12:

> In many states the intention of the party making an annexation is a critical, primary, important, controlling, or the most important factor in the three-part test, and these jurisdictions therefore typically give the most weight to intention. If there is doubt as to intent, the property should be regarded as personal rather than as a fixture."

(footnotes omitted).

  The intent of the annexing party is often set out in an agreement with a lender, lessor, or seller. In *In re Dalebout*, 454 B.R. 158 (Bankr. D. Kan. 2011), for example, the court examined Kansas law and held "with the exceptions set forth above, as between the parties to a purchase agreement, an agreement that property will be treated as personal property rather than a fixture is

binding." *Id.* at 164.[7] Similarly, in *In re Ariman*, 653 B.R. 685, 691-92 (Bankr. M.D. Fla. 2023), the court cited *Dalebout* and held that "if the dispute is between the original parties to a financing contract or their assigns, then the chattel is what the parties agreed it to be in the contract." And in *In re Williams,* 381 B.R. 742 (Bankr. W.D. Ark. 2008), the court held:

> Wells Fargo had an agreement with the Debtor that the property purchased was to be treated as personal property even after it was annexed to the real property. It is well settled that parties can agree that an item remain personal property and not become a fixture upon attachment, but only to an extent. When removal of the article would do substantial damage to the realty, where the parties could not have intended this, the contract will not control.

*Id.* at 747; *see also* 35A Am. Jur. 2d Fixtures § 19 ("[t]he characterization put upon articles as fixtures or nonfixtures by parties to a purchase contract should be upheld where the rights of third parties are not adversely affected, no statute suggests a contrary result, and the articles are not so completely merged with the realty as to prevent removal of the article without material injury to the realty.").

The intention of the debtor as expressed in an agreement between a lender and the debtor does not necessarily bind third parties:

> [W]hen rights of a third party are involved, the intention is considered in terms of what would be "reasonably apparent to such third person as manifested by physical facts and outward appearances."

*In re Hinson*, 77 B.R. 34, 36 (Bankr. M.D.N.C. 1987) (quoting *Little v. Nat'l Servs. Indus., Inc.*, 79 N.C. App. 688, 340 S.E.2d 510, 513 (1986)); *see also Ariman*, 653 B.R. at 691 (discussing *Hinson* with approval but distinguishing it).

---

[7] The exceptions referred to are (i) that the agreement is not necessarily binding on third parties and (ii) the agreement may not be honored if removing the goods would cause substantial damage to the realty. *Id.*

Likewise, if removing the goods would cause substantial damage to the realty, an agreement that the goods remain personal property may not be upheld. *See, e.g., Heiselt Const. Co. v. Morrison-Knudsen Co.*, 176 F.2d 207, 209 (10th Cir. 1949) (applying Utah law, the court held that tenant had the right to remove a building from the real property because it could be done without material injury to the land); *Citizens Bank of Greenfield v. Mergenthaler Linotype Co.*, 216 Ind. 573, 584 (1940) (one of the tests applied in determining the character of the property attached is whether or not it may be removed without material injury to the premises.); *Ariman*, 653 B.R. at 689 n.10 (in determining whether an item is a fixture, a key factor is whether it can be removed without material or substantial injury to the freehold); *Lankhorst v. Independent Sav. Plan Co.*, 39 F. Supp. 3d 1359, 1365 (M.D. Fla. 2014) (same); *Dependable Air Conditioning and Appliances, Inc. v. Office of Treas. and Ins. Comm'r*, 400 So. 2d 117, 119 (Fla. App. 1981) (same, citing cases).

Here, no third party is involved in the determination whether the System is a fixture. Likewise, the Court finds that it would not materially injure the House to remove the System. Every part of the System could be removed from the roof without damage except, perhaps, for the mounts bolted into the roof. Those could either be left in place or removed. If removed, the bolt holes could be sealed with rubberized caulk or something similar.

Evans's intent, as expressed in the Loan Agreement and Note, was to have the System retain its character as consumer goods, rather than to permanently affix the System to the House.

The Court finds and concludes that the System remains consumer goods. Assuming the System has been installed on the House, it did not become a fixture.

In addition to being consistent with New Mexico and other law on fixtures, the ruling advances the laudable policy of reducing the cost of financing solar panel purchases and installation. To facilitate borrowing, it is helpful for solar panels and related equipment to remain

consumer goods. If the panels and other equipment become fixtures, the lender could end up in a priority fight with the mortgage lender or could be prohibited from repossessing its collateral. Moreover, the lender would have to file a fixture filing to keep its perfected, first priority security interest, an additional expense and hassle. As consumer goods, Tech CU's purchase money security interest in the System was perfected when the security interest was granted. NMSA § 55-9-309. No financing statement was required. Had the System become a fixture, Tech CU would have been required to file a "fixture filing" (*see* NMSA § 55-9-102(40)), which must include the name and address of the debtor, a description of the collateral, the name and address of the secured party, and a description of the real property to which the System was affixed. NMSA § 55-9-502. It must be filed in the county where the real property is located. NMSA § 55-9-501(a)(1)(B).

Finally, it would be poor policy to allow debtors to covenant with their lenders that purchased solar panels are consumer goods, while arguing to the bankruptcy court in § 522(f) motions that the panels are fixtures. Evans made his bed when he signed the Loan Agreement and Note. Now he must lie in it. *See, e.g., Ryan Operations G.P v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 359 (3d Cir. 1996) ("a party to litigation will not be permitted to assume inconsistent or mutually contradictory positions with respect to the same matter in the same or a successive series of suits.").

D. <u>Tech CU Does Not Have a Lien on the House</u>.

Because the System is not permanently affixed to the House and remains consumer goods after installation, Tech CU retained its perfected, purchase money security interest in the System. Tech CU's security interest never attached to the House, however. Its situation is similar to a lender financing furniture or appliances—it has a security interest in the goods financed but not the house where the goods are kept.

## Conclusion

The Court concludes that the System never became a fixture and has retained its character as consumer goods. Because of that, Tech CU's claim against Evans is not secured by the House or any portion of it. When determining the merits of Debtors' motion to avoid Rees' judgment lien against the House, the Court will disregard Tech CU's secured claim. The Court will enter a separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: December 12, 2023
Copies to: Counsel of record